UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **David Coffman**, individually and on behalf of all others similarly situated,<br><br>                            Plaintiffs,<br><br>v.<br><br>**AM Communications, Inc.**, an Ohio Corporation; **AM Communications, Ltd.**, an Ohio Corporation; **James Johnson, LLC**, an Ohio Limited Liability Company and **James Johnson**,<br><br>                            Defendants. | No.<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

Plaintiff, David Coffman ("Plaintiff"), sues the Defendants, AM Communications, Inc.,

AM Communications, Ltd., James Johnson, LLC, and James Johnson (collectively

"Defendants") and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and

interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. and Ohio Revised

Code Ann. ("ORC") § 4111.0 for Defendants' failure to pay Plaintiff all earned minimum and

overtime wages.

2.      The FLSA was enacted "to protect all covered workers from substandard wages

and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739

(1981).  Under the FLSA, employers must pay all non-exempt employees a minimum wage of

pay for all time spent working during their regular 40-hour workweeks.  See 29 U.S.C. § 206(a).

Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  See 29 U.S.C § 207.

3.      ORC § 4111 establishes the law regarding minimum wage and overtime within the State of Ohio.

4.      Plaintiff brings this action on behalf of himself and all similarly-situated current and former employees of Defendants who were Cable Installers[1] classified by Defendants as independent contractors.

5.      Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendants for their unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

6.      Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendants for their unlawful failure to pay minimum wage and overtime due and owing Plaintiff and others similarly-situated in violation of ORC § 4111.

7.      Plaintiff brings a collective action under the FLSA to recover the unpaid minimum wages and overtime owed to him individually and on behalf of all other similarly-situated employees, current and former, of Defendants.  Members of the Collective Action are referred to as the "Collective Members."

8.      Additionally, Defendants' failure to compensate Plaintiff and all other similarly-situated employees at a rate equal to Ohio's required minimum wage and overtime rates violates

---

[1]      For the purposes of this Complaint, "Cable Installer" is exclusively a job title used for the purpose of classifying the putative class of similarly situated individuals, is not necessarily the job title of the Plaintiff and putative class, and has no bearing or relation to any specialization, skill, education, training, or other qualification that might otherwise be associated with such a job title.  For example, some Cable Installers may have also installed internet or telephone services yet are still appropriate putative class members.

Ohio Revised Statutes § 4111.  Plaintiff, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Ohio wage laws.  Members of the Ohio Rule 23 Class Action are referred to as the "Ohio Class Action Members."

9.      The Collective Members are all current and former employees who worked as Cable Installers for Defendants and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

10.     The Ohio Class Action Members are all current and former employees who worked as Cable Installers for Defendants in the State of Ohio and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

11.     Defendants own and operate cable installation companies that contract with Spectrum Cable to provide cable installation and other related services.

12.     At all relevant times, Defendants have operated pursuant to a policy and practice of intentionally misclassifying Plaintiff and all other similarly-situated employees as independent contractors.

13.     At all relevant times, pursuant to this misclassification, Defendants have willfully refused to pay a minimum wage; willfully refuse to pay overtime; and willfully reduced employee wages through unlawful deductions.

14.     In willfully refusing to pay a minimum wage; willfully refusing to pay overtime; and willfully reducing employee wages through unlawful deductions, Defendants have violated the minimum wage provisions of 29 U.S.C. § 206 and the overtime provisions of 29 U.S.C. § 207.

15.     In willfully refusing to pay a minimum wage and willfully refusing to pay overtime, Defendants have violated the minimum wage and overtime provisions of Ohio Revised Code Ann. § 4111.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States.  This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiffs occurred within the Northern District of Ohio, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

## PARTIES

18.     At all material times, Plaintiff is an individual residing in Summit County, Ohio, and is a former employee of Defendants.

19.     At all material times, Plaintiff regularly performed work for Defendants in Cuyahoga County, Ohio.

20.     At all material times, Defendant AM Communications, Inc. is an Ohio corporation licensed to transact business in the State of Ohio.  At all material times, Defendant AM Communications, Inc. does business, has offices, and/or maintains agents for the transaction of its customary business in Crawford County, Ohio.

-4-

21.     At all material times, Defendant AM Communications, Inc. does business as "AM Communications."

22.     At all relevant times, Defendant AM Communications, Inc. was Plaintiff's employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant AM Communications, Inc. had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant AM Communications, Inc. is subject to liability under the FLSA.

23.     At all material times, Defendant AM Communications, Ltd. is an Ohio corporation licensed to transact business in the State of Ohio.  At all material times, Defendant AM Communications, Ltd. does business, has offices, and/or maintains agents for the transaction of its customary business in Crawford County, Ohio.

24.     At all material times, Defendant AM Communications, Ltd. does business as "AM Communications."

25.     At all relevant times, Defendant AM Communications, Ltd. was Plaintiff's employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant AM Communications, Ltd. had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with

Defendants. As a person who acted in the interest of Defendants in relation to the company's employees, Defendant AM Communications, Ltd. is subject to liability under the FLSA.

26.     At all material times, Defendant James Johnson, LLC is an Ohio limited liability company licensed to transact business in the State of Ohio. At all material times, Defendant James Johnson, LLC does business, has offices, and/or maintains agents for the transaction of its customary business in Stark County, Ohio.

27.     At all material times, Defendant James Johnson, LLC does business as "James Johnson, LLC."

28.     At all relevant times, Defendant James Johnson, LLC was Plaintiff's employer under the FLSA. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. At all relevant times, Defendant James Johnson, LLC had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants. As a person who acted in the interest of Defendants in relation to the company's employees, Defendant James Johnson, LLC is subject to liability under the FLSA.

29.     Defendant James Johnson is an owner of James Johnson, LLC and was at all relevant times Plaintiff's employer as defined by the FLSA, 29 U.S.C. § 203(d).

30.     Under the FLSA, Defendant James Johnson is Plaintiff's employer. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. Defendant James Johnson is an owner of James Johnson, LLC. At all relevant times, Defendant James Johnson had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate

-6-

and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant James Johnson is subject to individual liability under the FLSA.

31.     At all material times, Defendants AM Communications, Inc., AM Communications, Ltd., James Johnson, LLC, and James Johnson are Plaintiff's "employer" as defined by Ohio Revised Code § 4111, *et seq*. The Ohio Revised Code defines "employer" as any individual, partnership, association, corporation, business trust, or any person or group of persons, acting in the interest of an employer in relation to an employee." As detailed above, and further herein, Defendants AM Communications, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson each acted in the interest of their business enterprise in relation to Plaintiff by setting Plaintiff's rate and method of pay, controlling his work schedules, controlling his conditions of employment, and maintaining his employment records. Each of these decisions by Defendants was designed to ensure the profitability and success of Defendants' business enterprise.

32.     At all material times, Defendants AM Communications, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson were Plaintiff's "Joint Employer". Two or more distinct entities can exert significant control over the same employee such that they are "joint employers." *E.g. In re Enterprise Rent-A-Car*, 683 F.3d 462, 467 (3d Cir. 2012). Analyzing whether an entity is a "joint employer" for purposes of the FLSA requires looking to several, non-exclusive factors in relation to the alleged employer's: (1) authority to hire and fire the relevant employees; (2) authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules,

including the rate and method of payment; (3) involvement in day-to-day employee supervision, including employee discipline; and (4) actual control of employee records, such as payroll, insurance, or taxes. The Court may also consider the totality of the circumstances, economic realities, and other information suggesting "significant control," which can be persuasive in conjunction with the enumerated elements of the test. Id. at 470.

29.     At all material times, Defendant AM Communications, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson had the authority to fire Plaintiff. Moreover, Plaintiff was required and expected to abide by the enterprise-wise rules and procedures established by both AM Communications, Inc., AM Communications, Ltd., and James Johnson, LLC. The decision to misclassify Plaintiff as an independent contractor, and therefore fail to pay Plaintiff according to the minimum wage requirements of the FLSA and Ohio law, was made jointly by AM Communications, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson. Moreover, the reduction in labor costs and corresponding increase in profits that resulted from misclassifying Plaintiff as an independent contractor were shared by AM Communications, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson.

30.     At all material times, Defendants AM Communication, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson were Plaintiff's "single employer." Single employer/enterprise theory examines whether "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 564 (E.D. Pa. 2011)  (citing *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 401 (1960)). The analysis has four elements: (1) the interrelation of operations between the corporations; (2) whether the corporations share common

management; (3) whether there was centralized control of labor relations; and (4) whether there existed common ownership or financial control. *Katz v. DNC Servs. Corp.* , No. CV 16-5800, 2018 WL 692164, at *3 (E.D. Pa. Sep. 27, 2019) (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003)).

33.    Defendants AM Communication, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson work together as a single enterprise in the business of providing cable, internet and phone installation services for Spectrum Cable customers. Defendants AM Communication, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson all share in any profit or loss resulting in the operation of their enterprise. Defendants AM Communication, Inc., AM Communications, Ltd., and James Johnson, LLC routinely share management, a role performed for both entities by James Johnson. The decision to misclassify Plaintiff as an independent contractor, and therefore fail to pay Plaintiff according to the minimum wage requirements of the FLSA and Ohio law, was made jointly by AM Communications, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson. Moreover, the reduction in labor costs and corresponding increase in profits that resulted from misclassifying Plaintiff as an independent contractor were shared by AM Communications, Inc., AM Communications, Ltd., James Johnson, LLC and James Johnson.  Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's work and wages at all relevant times.

34.    Plaintiff, in his work for Defendants, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

35.     Plaintiff, in his work for Defendants, was employed by an enterprise that had annual gross volume of sales made for business in excess of one hundred fifty thousand dollars, exclusive of excise taxes at the retail level.

36.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in commerce or the production of goods for commerce.

37.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in interstate commerce.

38.     Plaintiff, in his work for Defendants, regularly handled goods produced or transported in interstate commerce.

## NATURE OF THE CLAIM

39.     Defendants do business as AM Communications and James Johnson, LLC and offer cable installation services to customers.

40.     At all relevant times, Defendant AM Communications subcontracts with Spectrum Cable to provide cable installation services for Spectrum Cable's customers.

41.     At all relevant times, Defendant AM Communications in turn contracts with other subcontractors, such as James Johnson LLC, to perform such cable installation services.

42.     Upon information and belief, at all relevant times, Defendant AM Communications contracts with at least three subcontractors, including Defendant James Johnson, LLC, to provide such services.

43.     At all relevant times, when a work order comes into Spectrum Cable, Spectrum Cable submits that work to Defendant AM Communications.  Defendant AM Communications then determines which sub-contractor to assign the work to.  That sub-contractor then assigns the

work to a Cable Installer, such as Plaintiff or another member of the Collective and/or Ohio Class Action Members.

44.     At all relevant times, Defendant AM Communications has retained and exercised control over the manner and method that Cable Installers perform their work for their respective sub-contractors.

45.     For example, Defendant AM Communications, at all relevant times, controlled, supervised, and critiqued Plaintiff in his work for James Johnson LLC.

46.     At all relevant times, all Defendants have controlled the work assigned to Plaintiff and the Collective Members and the Ohio Class Action Members.

47.     At all relevant times, Cable Installers are not permitted to turn down jobs assigned to them by Defendants.

48.     At all relevant times, in his work for Defendants, Plaintiff attempted to refuse jobs that were scheduled too late in the evening for him.  When Plaintiff tried to refuse jobs, he was told that if he refused, he would no longer be permitted to work for the company.

49.     Upon information and belief, Collective Members and Ohio Class Action Members were told the same thing by Defendants if they tried to turn down a job that was assigned to them by Defendants.

50.     Plaintiff was hired by Defendants and worked for Defendants as a Cable Installer from approximately 2014 through approximately November 2020.

51.     At all relevant times, in his work for Defendants, Plaintiff worked as a Cable Installer, performing cable installation services for customers.

52.     Defendants, in their sole discretion, agreed to compensate Plaintiff at a flat rate per service job her performed.  Plaintiff was compensated by Defendants in this manner, regardless of how many hours he worked in a given workweek.

53.     Plaintiff typically worked between 60 and 70 hours per week.

54.     Rather than classify Plaintiff as an employee, Defendants classified him as an independent contractor.

55.     As a matter of common policy and practice, Defendants misclassify all of their Cable Installers as independent contractors.

56.     Consistent with this common policy and practice, Plaintiff and others similarly situated individuals have been intentionally misclassified by Defendants as independent contractors in and effort by Defendants to minimize labor costs and maximize profits across their enterprise.

57.     As a result of Defendants' common misclassification policy, Defendants have not paid a minimum wage or overtime pay to Plaintiff and others similarly situated.

58.     Specifically, Defendants required Plaintiff and others similarly situated to sign illegal "Independent Contractor Agreements" pursuant to which Plaintiff and others similarly situated were not paid an hourly wage equal to the applicable minimum wage and were not paid overtime compensation at a rate of one and one-half times their regular rates.

59.     Pursuant to Plaintiff's Independent Contractor Agreement, Plaintiff and others similarly situated were paid a flat rate per service job they performed.   Plaintiff and others similarly situated were compensated by Defendants in this manner, regardless of how many hours they worked in a given workweek.

60.     The FLSA applies to Plaintiff and all individuals similarly situated at all times during which they worked for Defendants.  No exceptions or exemptions to the FLSA apply to Plaintiffs and those similarly situated.

61.     Upon information and belief, Defendants employed hundreds of Cable Installers throughout the relevant time period without paying a minimum wage or overtime pay, and while denying them the rights and benefits due an employee.

62.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff and similarly situated individuals.

63.     At all relevant times, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to other putative Collective Members and Ohio Class Action Members who also worked as Cable Installers for Defendants.

64.     Plaintiff and the putative Collective Members and Ohio Class Action Members incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as independent contractors and failing to pay them a minimum wage and overtime pay.

65.     Because Defendants failed to pay their employees proper wages, the putative Collective Members' and Ohio Class Action Members' income consisted solely of the flat rate per service job performed.

66.     Defendants' misclassification of Plaintiff and other putative Collective Members and Ohio Class Action Members as independent contractors was specifically intended to enhance Defendants' profit margins at the expense of the putative Collective Members and Ohio Class Action Members as follows: (1) willfully failing to pay Cable Installers the minimum wage in

-13-

violation of the FLSA and ORC § 4111; (2) willfully suffering and permitting Plaintiffs and the putative Collective Members and Ohio Class Action Members to work in excess of 40 hours in a given workweek without paying overtime compensation at a rate of one and one-half times their regular rates; and (3) adopting and implementing employment policies that violate the FLSA and ORC § 4111.

67.     Defendants' misclassification of Plaintiff and those similarly situated was willful.

68.     Defendants knew or should have known that it was improper to classify Plaintiff and the putative Collective Members and Ohio Class Action Members as independent contractors.

69.     Workers in the putative Collective and Class cannot "elect" to be treated as employees or independent contractors.  Nor can workers in the putative Collective or Classes agree to be paid less than the applicable minimum wage.  Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative Collective and Class to waive their statutory rights and elect to be treated as independent contractors.

70.     Any contract which attempts to have workers in the putative Collective and Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

71.     The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S.

-14-

722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

72.     Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

73.     The totality of circumstances surrounding the employment relationship between Defendants and the putative Collective and Classes establishes economic dependence by the putative Collective and Classes on Defendants and employee status.  Here, Plaintiff and all individuals similarly situated are not in business for themselves and truly independent, but rather are economically dependent upon Defendants.  The putative Collective and Classes are not engaged in occupations or businesses distinct from that of Defendants.  To the contrary, the putative Collective and Classes are the basis for Defendants' business.  Defendants obtain the customers who seek out cable installation services, and Defendants provide the workers who conduct the cable installation services on behalf of Defendants.  Defendants retain pervasive control over the business operation as a whole, and putative Collective and Classes.

**Degree of Control Exercised by Defendants**

74.     Plaintiff and the other members of the putative Collective and Class do not exert control over any meaningful part of Defendants' business operation and do not stand as a separate economic entity from Defendants.  Defendants exercise control over all aspects of the

-15-

working relationship with Plaintiff and the other putative Collective and Ohio Class Action
Members.

75.     Plaintiffs and putative Collective and Ohio Class Action Members' economic
status is inextricably linked to conditions over which Defendants have complete control,
including without limitation advertising and promotion, business and financial relationships with
customers, business and financial relationship with insurers, and customer volume.

76.     Defendants exercise the following significant control over the work conditions of
Plaintiffs and others similarly situated:

      a.     Defendants require Plaintiff and putative Collective and Classes to
routinely work in excess of 40 hours per week;

      b.     Defendants pay Plaintiffs and the putative Collective and Classes only
varying flat rates based on the job performed;

      c.     Defendants direct Plaintiff and the putative Collective and Classes with
respect to which service jobs/runs to perform and what types of service to
provide;

      d.     Defendants require Plaintiff and the putative Collective and Classes to
wear Defendants' uniform;

      e.     Defendants require Plaintiff and the putative Collective and Classes to use
a phone application to obtain lists of their jobs and gather any necessary
customer signatures;

      f.     Defendants determined the tools and equipment Plaintiff and the putative
Collective and Classes have to use; and

g.      Defendants required Plaintiff and the putative Collective and Classes to purchase necessary equipment from them.

**Facts Establishing No Skill or Initiative of a Person in Business for Themselves**

77.      Plaintiff, like all members of the putative Collective and Classes, does not exercise the skill and initiative of a person in business for oneself;

78.      Plaintiff, like all members of the putative Collective and Classes, do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

79.      Plaintiff and the putative Collective and Classes have no control over customers, nor do they actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

80.      Defendants do not permit Plaintiff and the putative Collective and Classes to hire or subcontract other qualified individuals to provide additional cable installation to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

**Facts Establishing Relative Investment**

81.      Plaintiff's and the putative Collective's and Classes' relative investment is minor when compared to the investment made by Defendants.

82.      Plaintiff and the putative Collective and Classes make no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships.  All capital investment and risk belong to Defendants.

83.     Plaintiff's and the putative Collective's and Classes' investment is limited to fuel and amounts paid to Defendants for signage, uniforms, and tools.  Absent Defendants' investment and provision of the business, the Cable Installers would not earn anything.

**Facts Establishing Opportunity for Profit and Loss**

84.     Defendants manage all aspects of the business operation, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff.  Defendants provide all necessary capital to open and operate the business.

85.     Neither Plaintiff nor the putative Collective and Classes have responsibility for any aspect of Defendants' ongoing business risk.

**Facts Establishing Permanency**

86.     Plaintiff worked for Defendants as a Cable Installer from approximately 2014 through approximately November 2020.

**Fact Establishing Members of the Putative Collective and Classes Are an Integral Part of Defendants' Business**

87.     Plaintiff and the putative Collective and Classes are critical to Defendants' success.  Defendants' operation in wholly dependent on the cable, internet, and telephone installation services that Plaintiff and the putative Collective and Classes provide for customers.

88.     The primary "product" or "good" Defendants are in business to sell consists of cable installation services provided by members of the putative Collective and Classes.

89.     Members of the putative Collective and Classes, like Plaintiff, are economically dependent on Defendants and subject to significant control by Defendants.

**Facts Establishing that Defendants' Acts Were Willful**

90.      All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

91.      Defendants were aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiff and Members of the putative Collective and Classes were misclassified as independent contractors.

92.      Cable Installers working under conditions similar to those employed with Defendants have been determined to be employees–not independent contractors–in other FLSA cases.

93.      Despite this notice of their violations, and in an effort to enhance Defendants' profits, Defendants continued to intentionally misclassify Cable Installers like Plaintiff and similarly situated individuals, failed to pay them minimum wage in violation of the FLSA, and knowingly suffered or permitted them to work in excess of 40 hours during a workweek without paying them overtime compensation at a rate of one and one-half times their regular rate.  Such conduct was intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

## INJURY AND DAMAGE

94.      Plaintiff and all Members of the putative Collective and Classes suffered harm, injury, and damages, including financial loss, as a result of Defendants' conduct complained of herein.

95.      Plaintiff and all Members of the putative Collective and Classes were entitled to a minimum wage and overtime pay for their work performed for Defendants.  By failing to pay Plaintiff and the Members of the putative Collective and Classes a minimum wage and overtime

pay and interfering with their right to retain all of their earnings, Defendants injured Plaintiff and the Members of the putative Collective and Classes and caused them financial loss, harm, injury, and damage.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

96.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

97.     Plaintiff brings the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

98.     Plaintiff asserts those claims on behalf of himself, and on behalf of all similarly situated Cable Installers of Defendants, who were not paid all minimum wage and overtime compensation required by the FLSA during the relevant time period as a result of Defendants' compensation policies and practices.

99.     Plaintiff seeks to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

> **All Cable Installers (or individuals with other similar job duties or titles) who worked for Defendants, or any subcontractor of Defendants, and were misclassified as independent contractors at any time during the past three years.**

100.    The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of the Act. 29 U.S.C. § 255.  As alleged above, Plaintiff and similarly situated Cable Installers' claims arise out of Defendants' willful violations of the FLSA.  Accordingly, the Court should require appropriate notice of this action be given to all tipped employees employed by Defendants within three years from the filing of this Complaint.

101.    Upon information and belief, Defendants have employed more than one hundred (100) Cable Installers during the period relevant to this action.

102.    The identities of these individuals, as a group, are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiff, joinder of each member is not practicable.

103.    Because these similarly situated tipped employees are readily identifiable by Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

104.    Collective adjudication is appropriate in this case because the individuals whom Plaintiff wishes to notify of this action have been employed in positions similar to Plaintiff; have performed work similar to Plaintiff; and have been subject to compensation practices similar to those to which Plaintiff have been subjected, including unlawful misclassification as independent contractors and failure to pay the applicable minimum wage and overtime rates as required by the FLSA.

## OHIO CLASS ACTION ALLEGATIONS

105.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

106.    Plaintiff brings his Ohio wage claims as a Rule 23 class action on behalf of the following Ohio Class Action Members:

> **All Cable Installers (or individuals with other similar job duties or titles) who worked for Defendants, or subcontractors of Defendants, in Ohio and were misclassified as independent contractors at any time during the past three years.**

107.  <u>Numerosity</u>.  The number of Ohio Class Action Members is believed to be over one hundred.  This volume makes bringing the claims of each individual Ohio Class Action Member before this Court impracticable.  Likewise, joining each individual Ohio Class Action Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Ohio Class Action Members will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Ohio Class Action Members and Defendants.

108.  <u>Typicality</u>.  Plaintiff's Ohio claims are typical of the Ohio Class Action Members because like the Ohio Class Action Members, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as the other Ohio Class Action Members.  Defendants regularly required Plaintiff and the Ohio Class Action Members to work in excess of 40 hours in a given workweek without paying them overtime.  Defendants misclassified Plaintiff and the Ohio Class Action Members as independent contractors.  This was commonly, though not exclusively, done in order to prevent Plaintiff and the Ohio Class Action Members from being paid a minimum wage for all hours worked and overtime for all hours worked in excess of 40 in a given workweek.  As a result, Defendants failed to pay Plaintiff and the Ohio Class Action Members both minimum wage and overtime for all hours worked.

109.  As a result of such policy and practice by Defendants, Defendants violated the minimum and overtime wage provisions of Ohio Revised Code § 4111.

110.  <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Ohio Class Action Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required

under Ohio law.  Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Ohio Class Action Members he seeks to represent.

111.     <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

      a.      The number of hours worked by Plaintiff and the Ohio Class Action Members;

      b.      The amounts paid to Plaintiff and the Ohio Class Action Members;

      c.      The degree of control Defendants exerted over Plaintiff and the Ohio Class Action Members;

      d.      The relative investments of Defendants and Plaintiff and the Ohio Class Action Members;

      e.      The degree to which Plaintiff's and the Ohio Class Action Members' opportunity for profit and loss was determined by Defendants;

      f.      The skill and initiative required in performing the job;

      g.      The permanency of the relationship; and

      h.      The degree to which Plaintiff's and the Ohio Class Action Members' tasks are integral to Defendants' business.

112.     Common issues of law include, but are not limited to:

      a.      Whether Defendants paid all minimum wages due and owing to Plaintiff and the Ohio Class Action Members;

b.      Whether Defendants paid overtime wages due and owing to Plaintiff and the Ohio Class Action Members for all hours worked in excess of 40 in a given workweek;

c.      Whether Defendants improperly misclassified Plaintiff and the Ohio Class Action Members as independent contractors;

d.      Whether Plaintiff and the Ohio Class Action Members are entitled to compensatory damages;

e.      The proper measure of damages sustained by Plaintiff and the Ohio Class Action Members; and

f.      Whether Defendants' actions were "willful."

113.    Superiority.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any of the Ohio Class Action Members could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the system.  Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits.  Prosecution of separate actions by individual Ohio Class Action Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

114.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court and Judge.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Ohio Class Action Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.

The identities of the Ohio Class Action Members are readily identifiable from Defendants' records.

115.     This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; (3) the burden is on each Defendant to accurately record hours worked by employees; and (4) the burden is on each Defendant to prove it properly imposed the tip credit upon its employees.

116.     Ultimately, a class action is a superior forum to resolve the Ohio state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Ohio Class Action Members according to applicable Ohio laws.

117.     <u>Nature of Notice to be Proposed</u>.  As to the Rule 23 Ohio Class Action Members, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Ohio Class Action Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

**<u>COUNT ONE: FAIR LABOR STANDARDS ACT</u>**
**<u>FAILURE TO PAY MINIMUM WAGE</u>**
**(Against All Defendants)**

118.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

119.     Defendants willfully failed or refused to pay Plaintiff and the Collective Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

120.    As a result, Defendants failed to compensate Plaintiff and the Collective Members at least the applicable minimum wage rate for all hours worked.

121.    Defendants' practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206(a).

122.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff and the Collective Members employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

123.    Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, David Coffman, individually, and on behalf of all Cable Installers similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT TWO: FAIR LABOR STANDARDS ACT
## FAILURE TO PAY OVERTIME
### (Against All Defendants)

124.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

-26-

125.     Defendants willfully failed or refused to pay Plaintiff and the Collective Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

126.     As a result, Defendants failed to compensate Plaintiff and the Collective Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

127.     Defendants' practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required overtime wage rate violates the FLSA, 29 U.S.C. § 207(a).

128.     Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff and the Collective Members employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

129.     Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, David Coffman, individually, and on behalf of all Cable Installers similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

### COUNT THREE: OHIO REVISED CODE § 4111
### FAILURE TO PAY MINIMUM WAGE
**(Against All Defendants)**

130.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

131.    Defendants willfully failed or refused to pay Plaintiff and the Ohio Class Action Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

132.    As a result, Defendants failed to compensate Plaintiff and the Ohio Class Action Members at least the applicable minimum wage rate for all hours worked.

133.    Defendants' practice of willfully failing or refusing to pay Plaintiff and the Ohio Class Action Members at the required minimum wage rate violates the minimum wage provisions of ORC § 4111.

134.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Ohio Class Action Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's and the Ohio Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

135.    Plaintiff and the Ohio Class Action Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, David Coffman, individually, and on behalf of all Cable Installers similarly situated, respectfully request that the Court grant relief in Plaintiff's favor,

and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

**COUNT FOUR: OHIO REVISED CODE § 4111**
**FAILURE TO PAY OVERTIME**
**(Against All Defendants)**

136.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

137.    Defendants willfully failed or refused to pay Plaintiff and the Ohio Class Action Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

138.    As a result, Defendants failed to compensate Plaintiff and the Ohio Class Action Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

139.    Defendants' practice of willfully failing or refusing to pay Plaintiff and the Ohio Class Action Members at the required overtime wage rate violates the overtime provisions of ORC § 4111.

140.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Ohio Class Action Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff's and the Ohio Class Action Members' employment.  As such, Defendants' conduct constitutes a willful violation of the FLSA.

141.    Plaintiff and the Ohio Class Action Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, David Coffman, individually, and on behalf of all Cable Installers similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

RESPECTFULLY SUBMITTED this 22nd day of March, 2021.

BENDAU & BENDAU PLLC

By: /s/ *Clifford P. Bendau, II*
Clifford P. Bendau, II (OH No. 0089601)
BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176
Email: cliffordbendau@bendaulaw.com
             chris@bendaulaw.com


THE LAW OFFICES OF SIMON & SIMON

By: /s/ *James L. Simon*
James L. Simon (OH No. 0089483)
6000 Freedom Square Dr.
Independence, OH 44131
Telephone: (216) 525-8890
Facsimile: (216) 642-5814
Email: jameslsimonlaw@yahoo.com